## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARQUELL GREENE,

    Plaintiff,

    v.

    Civil Action No.:  ELH-21-978

U.S.A.,
WARDEN J.R. BELL,
TOM GERA,
KRISTI CRITES,
LISA HALL,
MOHAMMED S. MOUBAREK,

    Defendants.

## MEMORANDUM OPINION

Marquelle Greene, the self-represented plaintiff, is a federal prisoner.  He has filed a civil rights suit (ECF 1), as amended (ECF 10), against several defendants, asserting a variety of claims relating to a medical diagnosis.  Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). ECF 20.  The motion is supported by a memorandum (ECF 20-1) (collectively, the "Motion") and several exhibits.[1]

Plaintiff was advised of his right to file an opposition to the Motion.  *See* ECF 23.  But, he has not done so.  However, plaintiff's amended complaint is verified.  *See* ECF 10 at 19.  This is the equivalent of an opposing affidavit for summary judgment purposes.  *Davis v. Zahradnick*,

---

[1] Defendants submitted plaintiff's medical records as an exhibit, but they were filed under seal (ECF 21).  *See* Order of March 28, 2022.  ECF 24.

600 F.2d 458, 459–60 (4th Cir. 1979) (observing that "factual allegations of the verified complaint" established a prima facie case for relief).

No hearing is required to resolve the issues. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, I shall construe the Motion as a motion for summary judgment and grant it.

## I.   Factual Background

**A.   Amended Complaint Allegations**

At all times relevant, plaintiff was incarcerated in Maryland at Federal Correctional Institution, Cumberland ("FCI Cumberland"). Currently, he is confined to the United States Penitentiary, Hazelton in Bruceton Mills, West Virginia.

On July 31, 2017, plaintiff arrived at FCI Cumberland and was tested for tuberculosis ("TB"). ECF 10 at 3. At that time, plaintiff had a negative test result. Plaintiff was tested again on August 7, 2018, and again received a negative result. *Id*. However, on July 30, 2019, plaintiff tested positive for TB. ECF 10 at 3. He complains that, despite the positive test result, medical staff allowed him to return to general population and to "be on the 'look-out' for his name to appear on the call-out list" so he could be seen by a doctor. *Id*. at 3-4.

Plaintiff recalls that three days after the positive test result, he was placed in disciplinary segregation for an unrelated incident. ECF 10 at 4. On August 16, 2019, plaintiff received a chest x-ray, which he maintains showed that his lungs were infected and he "was a couple of numbers shy from becoming active." *Id*. Plaintiff was prescribed Isoniazid, Pyridoxine, and Rifapentine tablets. *Id*.

Greene asserts as the basis for his Complaint that medical staff did not isolate him after discovering he had a positive TB test, neglected to investigate how plaintiff contracted TB, and neglected to ascertain if staff or other inmates were at risk of infection. ECF 10 at 4. He asserts

claims for negligence, intentional infliction of emotional distress, and an Eighth Amendment claim for deliberate indifference to a serious medical need.

Specifically, plaintiff claims that all of the named defendants were negligent because they had a duty "to immediately find out how the plaintiff contracted [TB] and who transmitted it, to prevent harm to staff &/or other inmates" but failed to fulfill that duty.  ECF 10 at 5.  Instead, they "recklessly returned plaintiff to the general population," begging the question whether "defendants knowingly do the same exact thing with other inmates who tested positive."  *Id*. at 6.

Plaintiff recalls that defendant Tom Gera, "Health Service Administrator," *id.* at 3, told plaintiff "that he is one hundred percent positive that plaintiff contracted TB from a staff member because all inmates at FCI Cumberland between 2018 and 2019 tested negative."  *Id*. at 6.  In plaintiff's view, this was careless and reckless behavior "on the part of each defendant named" because "a staff member has possibly infected hundreds of inmates."  *Id*.  Plaintiff adds that Warden Bell, as well as the other defendants who are medical staff, had a duty to comply with protocol set by the "Department of Health and Human Services, Centers for Disease Control, Occupational Safety and Health Administration, and National Institute Occupational Health Policy Statement 6190.04."  *Id*.  In Greene's view, defendants' failure to isolate plaintiff, and to allow him to be placed in a cell with other inmates after he tested positive, put plaintiff and others in "harms way."  *Id*. at 7.

In support of his claim of intentional infliction of emotional distress, plaintiff reiterates that defendants acted recklessly when they failed to isolate him after the positive TB test and, assuming an officer exposed plaintiff to TB, it was reckless for the correctional officer to enter the institution and expose inmates to TB.  ECF 10 at 10.  He claims that, but for the defendants' actions, plaintiff would not be dealing with TB or have concerns about developing kidney and liver failure as a

result of contracting TB.  ECF 10 at 10.  Further, Greene states that he "came to prison disease free" but now has TB and must have ongoing chest x-rays and take medication to ensure that the disease does not become active, which has caused him mental distress.  *Id*. at 11.

Plaintiff's Eighth Amendment claim is based on his allegation that Warden Bell breached his duty to protect plaintiff when he permitted defendants Mohamed Moubarek, M.D., Clinical Director; Kristy Crites, Health Service Administrator; Lisa Hall, Health Service Administrator; and Tom Gera to deny plaintiff "prompt adequate medical attention/remedy," permitting his "agents/servants to be remiss in screening all staff," and "with gross deliberate indifference" chose to transfer plaintiff with his "grave medical concerns" to another facility, putting plaintiff's health at greater risk.  *Id*. at 12.  Further, plaintiff maintains that Moubarek and Gera denied him prompt, adequate medical attention and put his health at great risk.  *Id*. at 13.  And, he states that Hall put his health at risk and "committed fraud by falsifying a medical form then falsely claimed that plaintiff 'signed' said refusal form."  *Id*.  Plaintiff notes that the refusal form indicates that he refused medications that were prescribed for him but that his signature is typed on the form. Moreover, he alleges that at the time the refusal form was created, plaintiff was in solitary confinement and had no access to a typewriter.  *Id*. at 13-14.

Greene denies that he refused medications.  Rather, he "desperately implored medical staff" to provide him with treatment.  *Id*. 14.  In plaintiff's view, defendant Crites is also blameworthy in connection with the refusal form because she witnessed and cosigned it.  *Id*.

Plaintiff describes his injuries as including the fear of developing complications caused by TB; mental suffering due to the infection and possible development of full-fledged TB in the future; and hands that "shake," *id*. at 7, and "tremble uncontrollably . . . since being infected with Tuberculosis."  *Id.* at 8.  As relief, plaintiff seeks a declaratory judgment stating that defendants

were negligent, intentionally inflicted emotional distress on him and violated his constitutional right to be free from cruel and unusual punishment. *Id.* at 18. Additionally, plaintiff seeks compensatory damages of 50 million dollars and unspecified punitive damages. *Id.*

## B.      Defendants' Response

Defendants deny that plaintiff has TB. Rather, they claim that plaintiff had a positive Purified Protein Derivative ("PPD") skin test on August 1, 2019, which suggests he may have been exposed to TB. But, this does not indicate an active infection, particularly where, as here, there are no symptoms or signs of active infection. *See* ECF 20-3 at 1-7 (Declaration of Mohamed Moubarek, M.D.), ¶¶ 3, 4. Dr. Moubarek explains: "A person with a positive PPD test (generally an induration greater than 10 mm), but who lacks any symptoms [or] signs of active infection has what is called a latent TB infection ("LTBI")." *Id.* ¶ 4. To have LTBI means that "a relatively small number of living tubercle bacilli (M. Tuberculosis) are present in the body, but are not multiplying or causing clinically active disease." *Id.* ¶ 5. A person with LTBI will have positive tuberculin tests but have no symptoms of TB and is not infectious to others. *Id.*

In addition, Dr. Moubarek explains that the Clinical Practice Guidelines for the Federal Bureau of Prisons ("BOP") do not require isolation of inmates who are asymptomatic. ECF 20-3, ¶ 7; ECF 20-3 at 47 (guidelines). "The BOP follows a twelve-week prophylactic regimen for individuals diagnosed with LTBI," which "lessens the probability that LTBI" will develop into active TB. *Id.* at 4, ¶ 8. That regimen involves "12 weeks of Isoniazid Tablets and Rifapentine Tablets supplement with Pyridoxine (Vitamin B6)." *Id.*; *see also* ECF 20-3 at 62-65 (guidelines for treatment of LTBI).

On August 2, 2019, a chest x-ray was ordered for plaintiff, which he received on August 16, 2019. The x-ray showed "[n]o acute cardiopulmonary disease. Lungs are clear. Heart size

normal." ECF 21 at 11; *see also id*. at 13 (radiology results provided to plaintiff stating chest x-ray was normal).

Plaintiff was seen by Health Services representatives on August 13, 2019, and again on August 20, 2019. He denied any symptoms. ECF 20-3, ¶¶ 9, 11, 12. Physician's Assistant Gera noted on August 20, 2019, that plaintiff refused to take prophylactic medications, despite education about same. *Id*. at 14. Because plaintiff refused prophylactic treatment, Gera established a plan to provide plaintiff with chest x-rays every six months and annually for two years. *Id*. at 15. Additionally, plaintiff was advised to return immediately if his condition worsened. *Id*.

On September 6, 2019, Gera noted that since custody staff were requesting a transfer for plaintiff, prophylactic treatment would be placed on hold since "preliminary labs have not been performed and medication has not been initiated." ECF 21 at 23. The "medical hold" on plaintiff was therefore removed so he could be transferred, and Gera noted that "initiation of treatment can be accomplished at next institution." *Id.*

Lisa Hall, RN, IOP/IDC, saw plaintiff on October 11, 2019, and noted that his transfer was denied. ECF 21 at 24. Hall indicated the plaintiff "remains agreeable to taking LTBI prophy" but that labs were still needed as plaintiff "refused last blood work which is needed prior to start of prophy." *Id*. Plaintiff was referred to a primary care provider ("PCP") for a medication order. *Id*.

Hall again saw plaintiff on October 18, 2019, for a follow up, and he told her that he did not want to take "that medicine for TB anymore." ECF 21 at 26. Follow-up was to be done through the Chronic Care Clinic. *Id*. at 27. A handwritten note from plaintiff to Hall on October 18, 2019, states that he refuses to take the medication because of the side effects. *Id*. at 29. Plaintiff also indicated that he did not want the medication because medical staff could not tell him how he got TB. *Id*. A refusal form was signed by plaintiff. *Id.* at 30.

On November 12, 2019, plaintiff again expressed his reluctance to take prophylactic medications and told Gera that he had read about all the potential side effects of the medications. ECF 21 at 40.  Gera noted that plaintiff had no symptoms of active disease such as a cough, fever, chills, or night sweats.  *Id*.  This encounter was the last one that staff at FCI Cumberland had with plaintiff because he was transferred to USP Hazelton on December 9, 2019.  ECF 20-3 at 6, ¶ 20.

According to Moubarek, there have been no active TB infections at FCI Cumberland for the past six years.  ECF 20-3, ¶ 21.

On April 3, 2020, plaintiff completed a tort claim related to his contraction of LTBI.  ECF 20-2 (Declaration of Misty Shaw), ¶ 7.  BOP denied the claim on September 30, 2020.  *Id.* ¶ 8. Plaintiff did not pursue any administrative remedies.  *Id.* ¶ 9.

## I.     Standards of Review

### A.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 305; *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an

8

affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 665.

**B.**

The Motion is styled, in part, as a motion to dismiss under 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

In regard to a Rule 12(b)(6) motion, a court ordinarily "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S.*

*Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was

granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom*; *Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery

was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d).  Moreover, I am satisfied that it is appropriate to address the Motion as one for summary judgment, as this will facilitate resolution of the case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has

clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004. And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as

to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## II.    Discussion

**A.    Federal Tort Claims Act – Negligence and Intentional Infliction of Emotional Distress**

Defendants urge dismissal of the case under Rule 12(b)(1) and Rule 12(b)(6) because plaintiff filed his Federal Tort Claims Act ("FTCA") suit, encompassing his claims for negligence and intentional infliction of emotional distress ("IIED"), more than six months after his tort claim was denied by the BOP. In their view, this renders his FTCA claims untimely. ECF 20-1 at 14-15.

Additionally, the individual defendants assert that they are immune from liability under the FTCA pursuant to the Westfall Act, because they were acting within the scope of their employment. *Id*. at 15-16. Further, defendants contend that plaintiff's negligence claims as to the United States are not cognizable under Maryland law because plaintiff does not allege that a duty was owed to him or that he personally was injured. *Id*. at 16-18. And, they assert that the government has not waived sovereign immunity for the IIED claim. ECF 20-1 at 5. In any event, they assert that the allegations "fall well short" of stating a claim for IIED. *Id.*

"Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." *Kerns v. United States*, 585 F.3d 187, 193-94 (4th Cir. 2009) (citing *United States v.*

*Sherwood*, 312 U.S. 584, 586 (1941)).   But, to the extent that the United States has expressly waived sovereign immunity, a plaintiff may recover against the United States.  *See*, *e.g.*, *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citation omitted); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (holding that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed") (citation and internal quotation marks omitted).

Under the FTCA, Congress has waived the sovereign immunity of the United States, exposing it to tort liability for claims "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," so long as certain conditions are satisfied.  28 U.S.C. § 1346(b)(1); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008).  However, FTCA cases must be "tried by the court without a jury."  28 U.S.C. § 2402.

Notably, "'the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States.'"  *Lins v. United States*, 847 Fed. App'x 159, 162 (4th Cir. 2021) (quoting *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995)).  Moreover, the United States may be liable under the FTCA only to the extent that a "private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), and only "in the same manner and to the same extent as a private individual under like circumstances."  *Id.* § 2674.

Thus, "the substantive law of each state establishes the cause of action."  *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2012); *see United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003) (citation omitted).  And, "[t]he Supreme Court has concluded that the 'law of the place' refers to the 'whole law,' including choice-of-law principles of the state where

16

the negligent act or omission occurred." *Id.* (citing *Richards v. United States*, 369 U.S. 1, 11 (1962)).

The United States is not liable for *all* torts committed by federal employees, however. Section 1346(b) of Title 28 "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). For a claim to fall within that "certain category," it must be:

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id.* (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original).

Of import here, Congress has not waived sovereign immunity for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This prevents "judicial second-guessing" of administrative and legislative decisions grounded in policy. *United States v. Gaubert*, 499 U.S. 315, 323 (1991). Accordingly, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 537 (1988); *see also Lins*, 847 Fed. App'x at 163; *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006).

The FTCA is narrowly construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). An FTCA claim, or any other lawsuit alleging negligence by federal employees, may not be maintained against individual federal employees who were acting within the scope of their employment when the alleged wrongful conduct took place. 28 U.S.C. § 2679(b)(1).

17

Pursuant to § 2679(d)(1) and 28 C.F.R. § 15.4, the United States Attorney for the District of Maryland, Erik L. Barron, has provided certification that all of the individually named defendants were acting within the scope of their employment during the events described in the amended complaint. ECF 20-4. Therefore, plaintiff's claims of negligence and intentional infliction of emotional distress, as they pertain to the individual defendants, must be dismissed.

The FTCA requires a claimant to present a claim, in writing, to the appropriate federal agency, due within two years after the claim accrues, and then with the appropriate U.S. District Court within six months after the date of a final denial of the claim by the agency. 28 U.S.C. § 2401(b). Plaintiff's tort claim, filed with the BOP, was denied on September 30, 2020. ECF 20-2 at 20 (denial letter). Plaintiff's Complaint is postmarked April 15, 2021. ECF No. 1-2.

The FTCA's limitations provision is not jurisdictional, however. *See United States v. Wong*, 575 U.S. 402, 410-12 (2015). Thus, equitable tolling may be available. *Id.* at 405, 412; *see also Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016) (FTCA limitations period is not a jurisdictional rule, it is a claims processing rule).

A litigant is entitled to equitable tolling if he establishes: "'(1) that he has been pursuing his rights diligently,'" and (2) "'some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see Edmonson v. Eagle National Bank*, 922 F.3d 535, 548 (4th Cir. 2019); *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019); *see also Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014). "[T]he diligence prong...covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Menominee*, 577 U.S. at 257.

But, "[e]quitable tolling is a rare remedy available only where the plaintiff has 'exercise[d]

due diligence in preserving [her] legal rights.'" *Cruz*, 773 F. 3d at 147 (quoting *Chao v. Va. Dep't of Transp.,* 291 F.3d 276, 283 (4th Cir. 2002)); *see Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly."); *Lucas v. United States*, 664 F. App'x 333, 335 (4th Cir. 2016) ("Equitable tolling is an extraordinary remedy limited to those occasions when 'it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'") (quoting *Harris,* 209 F.3d at 330). Moreover, "principles of equitable tolling do not extend to garden variety claims of excusable neglect." *Rouse v. Lee,* 339 F.3d 238, 247 (4th Cir. 2003) (*en banc*); *see Irwin,* 498 U.S. at 96 (concluding that equitable tolling does not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed suit within 30 days of the date he personally received notice).

To comply with the filing deadline, plaintiff had to file his Complaint with this court on or before March 30, 2021. Of import here, plaintiff bears the burden of "establishing a basis for equitable tolling . . . ." *Rempersad v. United States*, GJH-18-2629, 2020 WL 2794558, at *7 (D. Md. May 29, 2020). Plaintiff has not even attempted to meet his burden.

In particular, plaintiff has failed to come forward with any basis for this court to find that he is entitled to equitable tolling as to the six-month filing deadline. Nor has he disputed that he failed to comply with the requirement. *See Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005) (stating that "litigant seeking equitable tolling bears the burden of establishing two elements"). Thus, plaintiff's negligence claims against the United States is time barred and must be dismissed.

The FTCA also excludes causes of action for emotional injuries that are unaccompanied by a physical injury. In 28 U.S.C. § 1346(b)(2), it states:

> No person convicted of a felony who is incarcerated while awaiting sentencing
> or while serving a sentence may bring a civil action against the United States or

an agency, officer, or employee of the Government, for mental or emotional
injury suffered while in custody without a prior showing of physical injury.

Plaintiff claims that he suffered a physical injury by virtue of his asserted TB infection.
But, the evidence suggests otherwise. Plaintiff's amended complaint intimates that he had an
active TB infection. However, as explained by Dr. Moubarek, a positive PPD test in a patient who
exhibits no symptoms of TB and has received a negative chest x-ray is not suffering from an active
disease process. Plaintiff's positive PPD test is the only allegation regarding a physical injury.
Therefore, his claim for intentional infliction of emotional distress against the United States
necessarily fails.

In any event, plaintiff has failed to state an IIED claim. Generally speaking, claims for
IIED are disfavored, difficult to establish and, as such, "rarely viable." *Respess v. Travelers Cas.
& Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011); *see generally Arsham v. Mayor &
City Council of Balt.*, 85 F. Supp. 3d 841, 850 (D. Md. 2015); *Manikhi v. Mass. Transit Admin.*,
360 Md. 333, 367, 758 A.2d 95, 113 (2000); *see Bagwell v. Penninsula Reg'l Med. Ctr.*, 106 Md.
App. 470, 514, 665 A.2d 297, 319 (1995) (stating that the tort of intentional infliction of emotional
distress is "difficult to satisfy"), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996); *see also* DAVID
CRUMP, RETHINKING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, 25 Geo. Mason L. Rev.
287, 297 (2018) (noting that an IIED claim is "a kind of vituperative epithet" that "adds little that
can be the subject of a separate or additional recovery" but "makes [the litigation] more
expensive").

In Maryland, in order to prevail on a claim for IIED, a plaintiff must show that (1) the
defendant's conduct was intentional or reckless; (2) her conduct was extreme and outrageous; (3)
there was a causal connection between the defendant's wrongful conduct and the emotional
distress suffered; and (4) the emotional distress was severe. *Harris v. Jones*, 281 Md. 560, 566,

380 A.2d 611, 614 (1977); *accord, e.g.*, *Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42, 625 A.2d 959, 963 (1993); *Mixter v. Farmer*, 215 Md. App. 536, 548, 81 A.3d 631, 637 (2013); *Lasater v. Guttmann*, 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010).

The defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Arsham*, 85 F.Supp.3d at 850 (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614). Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton*, 66 Md. App. at 59-60, 502 A.2d at 1064), *aff'd*, 166 F.3d 1208 (4th Cir. 1998). Moreover, since the Maryland Court of Appeals first recognized the tort of IIED in 1977, *Harris*, 281 Md. 560, 380 A.2d 611, it has repeatedly advised that "recovery" for IIED "will be meted out sparingly[.]" *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991); *see Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992); *Caldor, Inc.*, 330 Md. at 642, 625 A.2d at 963.

The "balm" of IIED recovery is to be "'reserved for those wounds that are truly severe and incapable of healing themselves.'" *Figueiredo-Torres*, 321 Md. at 653, 584 A.2d at 75 (internal citation omitted). In my view, plaintiff has not alleged conduct that is sufficiently "extreme and outrageous" so as to meet the high bar for an IIED claim. When a "plaintiff has done no more than conclusorily allege that he suffered 'severe emotional distress' and 'mental anguish,'" this is insufficient to make out an IIED claim. *Farasat*, 32 F. Supp. 2d at 248 (internal citations omitted); *see also, e.g.*, *Womack v. Ward*, DKC-17-3634, 2018 WL 3729038, at *6 (D. Md. Aug. 6, 2018) (assertion that plaintiff suffered various forms of stress and anxiety, without additional supporting factual allegations, insufficient); *Tavakali-Nouri v. State*, 139 Md. App. 716, 728-29 (2001), 779

A.2d 992, 999-1000 (assertion that plaintiff "suffered emotional distress and anguish," without supporting factual allegations, was insufficient).

**B.**  *Bivens* **claim**

An individual whose constitutional rights have been violated by a state official may bring an action seeking monetary damages against the official under 42 U.S.C. § 1983.  "But § 1983 does not provide a cause of action against *federal* officials, and there is no analogous statute imposing damages liability on federal officials."  *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019) (emphasis in original), *cert. denied*, ___ U.S. ___, 140 S. Ct. 2565 (2020).

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for damages against federal officers who allegedly violated a citizen's rights under the Constitution, and allowed the plaintiff to seek compensatory damages from federal agents who allegedly violated the Fourth Amendment.  *Id.* at 396-97.  But, "[i]n the years since *Bivens* was decided . . . the Supreme Court's approach to implied damage remedies has changed dramatically, to the point that "'expanding the *Bivens* remedy is now a disfavored judicial activity.'"  *Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021) (quoting *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1857 (2017).

The Supreme Court has clarified over the years that "a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'"  *Ziglar*, 582 U.S. __, __, 137 S.Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).  But, an Eighth Amendment claim of deliberate indifference to a serious medical need may be pursued through a *Bivens* claim.  *See Carlson*, 446 U.S. at 18-19; *but see Earle*, 990 F.3d at 776 (*Bivens* may not be extended to include a federal inmate's claim that prison officials violated his First Amendment rights through retaliatory actions).

22

The Eighth Amendment protects the rights of convicted prisoners. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)).  It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  And, "[i]t is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 303; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).  Moreover, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally

23

*denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor,* 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. As the *Heyer* Court put it, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10.

24

Plaintiff's claim that his Eighth Amendment right to remain free from cruel and unusual punishment due to defendants' deliberate indifference to his serious medical needs fails for several reasons.  First, 28 U.S.C. § 2676 provides that a "judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."  In short, because plaintiff's FTCA claims are subject to dismissal, so is his *Bivens* claim.

Second, plaintiff did not exhaust his administrative remedies prior to filing his lawsuit, as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides, in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. §1997e(h); *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc*., 407 F.3d 674, 682 (4th Cir. 2005).  Nevertheless, a claim that has not been exhausted may not be considered by this court.  *See Bock*, 549 U.S. at 220.  In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Generally, a court may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).

Here, plaintiff claims he could not exhaust administrative remedies because he was transferred to another BOP facility.  However, as defendants point out, administrative remedies may still be pursued when the topic concerns events that occurred at a previous facility.  *See* ECF 20-2 at 33 (BOP Administrative Remedy Program Statement).  There is no record that plaintiff pursued this avenue of exhaustion.  Plaintiff's failure to exhaust administrative remedies is

therefore not due to the unavailability of the process and his complaint may be dismissed on this basis alone.

Although plaintiff contests that he refused medication, the undisputed record indicates that medical staff developed an alternative treatment plan in lieu of the medications.  That plan included regular chest x-rays and monitoring in a chronic care clinic for any symptoms that may arise.  ECF 21 at 9, 15, 17, 26-27.  Defendants do not allege that plaintiff refused the alternative treatment plan.  Importantly, the dispute over whether plaintiff actually refused prophylactic treatment is not material, as plaintiff fails to allege that any harm has befallen him as a result of allegedly being denied treatment.

"Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Lightsey*, 775 F.3d at 178 ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference.").  There are no exceptional circumstances alleged in this case.

### IV.    Conclusion

For the reasons stated herein, defendants' Motion, construed as a motion for summary judgment.  A separate Order follows.

 March 29, 2022  
Date

_____/s/_____  
Ellen L. Hollander  
United States District Judge

27